**William P. JUNGELS, Plaintiff,**

v.

**David PIERCE, in his official capacity as Mayor of the City of Aurora, and the City of Aurora, Illinois, Defendants.**

**No. 86 C 1828.**

United States District Court, N.D. Illinois, E.D.

July 21, 1986.

318

Jacob Pomeranz, Cornfield and Feldman, Chicago, Ill., for plaintiff.

Glen H. Carrier, Aurora, Ill., for defendants.

BUA, District Judge.

## ORDER

Before the Court is defendants' motion to dismiss plaintiff's complaint for failure

to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, defendants' motion to dismiss is granted.

## I. FACTS

Plaintiff, William P. Jungels was appointed as a Commissioner of the Civil Service Commission of the City of Aurora in 1980. Jungels' term in that office was to expire in December 1987. On November 25, 1985, a letter written by Jungels, as a private citizen, was published in the Aurora Beacon News. On November 27, 1985, defendant David Pierce, Mayor of the City of Aurora, discharged Jungels from his position as Commissioner. Jungels claims that he was not given any reason for his discharge, nor was he given a hearing, and that these circumstances constituted an unconstitutional deprivation of property without due process as entitled to him under the Fourteenth Amendment. In a second count, Jungels claims that the contents of the letter to the Aurora Beacon News were the reason for his discharge, which constituted a violation of his First Amendment rights. In the third count, Jungels states that Pierce's public announcement that Jungels was being removed because of his prejudice stigmatized Jungels and deprived him of his "liberty" interest in his good name. Jungels seeks exemplary damages, attorneys' fees, and reinstatement to his former position.

## II. DISCUSSION

A brief summary of the major points of contention is as follows: In Count I, Jungels claims a deprivation of his property interest in his job as Commissioner because he was discharged without notice or an opportunity to be heard. Defendants respond to this claim by stating that the city ordinance which governs the dismissal of employees does not require a hearing. Defendants further contend that Jungels does not have a property interest in his job as Commissioner. In Count II, Jungels states that he was discharged for expressing his views in a public forum and that it was an infringement on his First Amendment rights. Defendants respond to this allegation by stating that Jungels was never prevented from expressing his views in a public forum. Moreover, given the nature of his government position, the views he expressed made it impossible for him to perform his duties in an acceptable manner. Finally, Jungels alleges that the defendant Pierce, in publicly labeling Jungels as prejudiced, stigmatized him and deprived him of his "liberty" interest. Defendants assert that his remarks were not defamatory and that, even if they were, the action is more properly a state court defamation action and should not be heard by the federal court.

### A. Count I—Violation of Procedural Due Process

Jungels asserts that, after being informed of his dismissal on November 27, 1985, he was given no reason for dismissal nor a hearing for him to express his views. Jungels further states that under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), if a government employee is deprived of a property interest, as defined by state law, that employee is entitled to constitutional protections. Jungels alleges that his position as a Commissioner of the Civil Service Commission constituted a property interest under Illinois law and is thereby entitled to procedural due process protection.

Defendants counter that the governing city ordinance concerning dismissal of employees does not require a hearing and that Jungels did not request a hearing. Pierce also denies that Jungels has a property interest in his position as Commissioner on the City's Civil Service Commission.

In order to qualify for procedural due process protection, a property interest must be defined according to state or local law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Generally, when an employee can be discharged only "for cause," he has a protected property interest in his job.

*Id.; Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). On the other hand, "at will" employment does not create a protected property interest. *Board of Regents v. Roth, supra; Perry v. Sinderman, supra.* The employer's own rules and/or mutually explicit understandings may also support a protected property interest. *Perry v. Sinderman, supra.*

■ In the present case, the Court finds that Jungels has a protected property interest in his position as Commissioner. The city ordinance states that a commissioner may only be dismissed "for cause." Even though commissioners are appointed for definite terms, Jungels had a legitimate expectation that he would be able to finish his term, which did not expire until December 1987. This case involves termination, not nonrenewal.

■ However, the mere existence of a property interest does not necessarily entitle an employee to a full battery of constitutional protections. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Supreme Court found that it is not always necessary to conduct a hearing before dismissing a government employee. The rationale used by the Supreme Court and followed by courts in this jurisdiction is exemplified in cases such as *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251 (7th Cir.1985). Both courts used a balancing of interest test to determine whether procedural due process had been violated. In *Pickering,* a teacher had been dismissed for writing a letter to a local newspaper criticizing the Board of Education. In finding that the teacher's constitutional rights had been violated, the Supreme Court stated: "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734.

In *Patkus,* the Seventh Circuit Court of Appeals also used an interest balancing test to determine whether plaintiff's rights had been infringed upon. 769 F.2d at 1258. In that case, the court found that the government's interest in efficient operations could outweigh plaintiff's interest in speaking freely.

■ In the present case, the Court finds that the City of Aurora's interest as an employer outweighs Jungels' interest as a private citizen to express his views. The letter written by Jungels to the Aurora Beacon News on November 25, 1985 shows a clear bias against Hispanics. As Commissioner of the Civil Service Commission, Jungels has a great deal of influence over the hiring and firing of city employees. The Court finds that Jungels' ability to fairly execute his duties as Commissioner and the public's perception of him were substantially undermined by his letter to the Aurora Beacon News.

As to plaintiff's argument concerning federal protections of state created property rights, *Cleveland Board of Education v. Loudermill, supra,* is clearly distinguishable. That case dealt with a full-time civil service employer. Jungels' position is a part-time one, he attends meetings twice a month, receives a nominal salary, and has no right of tenure or fringe benefits.

Therefore, the Court holds that, under the *Pickering* balancing test, Jungels does not state a cause of action for violation of his constitutional rights. Even though Jungels has a property interest, it is insubstantial in relation to the interest of the City of Aurora in the fair execution of its employee hiring and discharge process, and in the public's perception of it.

### B. *Count II—Violation of First Amendment Rights*

Jungels contends that his discharge due to his letter in the Beacon News infringed

upon his First Amendment rights. Jungels alleges that the letter was written in his capacity as a private citizen, without reference to his public position, and that the letter addressed a matter of public concern. Therefore, Jungels asserts that his speech falls under constitutional protection.

Pierce responds by saying that Jungels was never prevented from publishing his views. Furthermore, Pierce argues that the views expressed by Jungels showed him to be incapable of fulfilling his duties as Commissioner.

■ The legal analysis of this issue must begin with the dismissal of Pierce's contention that the only way to infringe upon free speech is to physically prevent it. This contention is illogical and flies in the face of common sense. Certainly the fear of losing one's job as a result of expressing oneself has a chilling effect on free speech.

However, Pierce's second argument has more merit. The Court's First Amendment analysis follows the same lines as the Fourteenth Amendment analysis in Count I above. The main principle set forth in *Pickering v. Board of Education, supra,* was that a public employee has the right to express his views in a public forum, and may not be denied his employment for said act absent some substantial showing of detriment or disruption to his employer. This idea has been reiterated more recently in *Linhart v. Glatfelter,* 771 F.2d 1004 (7th Cir.1985) and *Egger v. Phillips,* 710 F.2d 292 (7th Cir.1983).

■ Important to this analysis is the contents of the November 25 letter. The letter concerns the allocation of public funds to Aurora's Hispanic community and this is certainly a matter of public concern. Absent a showing of detriment or disruption to the employer, this expression would be protected. Unfortunately for Jungels, certain remarks and the general tone of the letter disparage Hispanics. A reasonable reader of this letter would get the distinct impression that the author has a bias against Hispanics. As a result of the contents of the letter and the public position

held by its author, the City of Aurora could conceivably be liable for legal action every time a Hispanic was discharged or denied a position with the City. This could cause major disruption to municipal employment operations. In light of this substantial showing of disruption to the City's Civil Service Commission, Jungels' letter does provide a proper basis for his discharge. Therefore, Count II will be dismissed.

### C. Count III—Deprivation of Liberty Interest

Jungels alleges that, when publicly announcing his dismissal, Pierce labeled him as prejudiced. Jungels further alleges that this label stigmatized him and deprived him of his liberty interest in his good name under 42 U.S.C. § 1983.

Pierce responds that his statement concerning Jungels were not defamatory. Moreover, Pierce states that, if they were defamatory, there is still no cause of action under § 1983, but a state tort claim for defamation.

The first issue to be decided is whether Pierce's statements were defamatory. The Court is convinced that a mayor's public statement that someone is prejudiced could be defamatory.

The next issue to analyze is whether there would be a cause of action under § 1983. The traditional test for a claim under § 1983 is the "stigma plus" test. "Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official . . . ," *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). In order to satisfy the "stigma plus" test, there must be some tangible harm done to claimant, such as loss of job or money. *See also Board of Regents v. Roth, supra,* 408 U.S. at 573–75, 92 S.Ct. at 2707.

■ In the present case, the Court is not persuaded that the plaintiff sustained the required damage for a § 1983 claim. Jungels has lost his position as Commissioner; however, this job pays a nominal

salary and has few, if any, tangible side benefits. There is no allegation that, because of Pierce's remarks, Jungels has lost his regular job or is deprived in any way of earning a living. There are no allegations of any other significant monetary or tangible losses. Jungels may very well have a valid tort claim for defamation, but this is a matter for state courts and does not state a cause of action under § 1983. Therefore, Count III will be dismissed.

### III.  *CONCLUSION*

For the reasons stated above, the Court grants defendants' motion to dismiss for failure to state a claim for which relief can be granted.

IT IS SO ORDERED.